**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| JAMES ERIC MANSFIELD,<br>MICHAEL DUNHAM MURPHY,<br>BERNIE FARMER,<br>DAVID TATE,<br><br>Plaintiffs,<br><br>v.<br><br>MISSOURI DEPARTMENT OF CORRECTIONS,<br>DOUG WORSHAM,<br>GEORGE A. LOMBARDI,<br>RELIGIOUS PROGRAMMING ADVISORY COUNCIL,<br>JOHN DOES 1-99,<br><br>Defendants. | ) | No. 09-4171-CV-C-SOW<br>BENCH TRIAL REQUESTED |

## CIVIL COMPLAINT

Plaintiffs, pro se, sue defendants under the Constitution of the United States and the provisions of 42 U.S.C. sections 1983 and 2000cc et. seq., seeking permanent injunction, declaratory relief, and equal protection.

## JURISDICTION

1. This action arises under the Constitution of the United States and the provision of 42 U.S.C. sections 1983 and 2000cc et. seq. (Hereafter, RLUIPA).

2. The Missouri Department of Corrections receives federal funding which places it under the jurisdiction of RLUIPA.

3. This action seeks declaratory judgment that defendants have violated plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution, specifically that their rights to free exercise of religion are being substantially burdened.

4. This Court has subject matter jurisdiction under 28 U.S.C. sections 1331 and 1343(a).

5. Venue is proper in this judicial district pursuant to 28 U.S.C. section 1391(b).

## STATEMENT OF PARTIES

6. Plaintiff James Eric Mansfield, register number 191434, is a citizen of the United States and incarcerated in the Missouri Department of Corrections. Service can be made at 8200 No More Victims Road, Jefferson City, Missouri, 65101.

7. Plaintiff Michael Dunham Murphy, register number 36193, is a citizen of the United States and incarcerated in the Missouri Department of Corrections. Service can be made at 8200 No More Victims Road, Jefferson City, Missouri, 65101.

8. Plaintiff Bernie Farmer, register number 164500, is a citizen of the United States and incarcerated in the Missouri Department of Corrections. Service can be made at 8200 No More Victims Road, Jefferson City, Missouri, 65101.

9. Plaintiff David Tate, register number 155209, is a citizen of the United States and incarcerated in the Missouri Department of Corrections. Service can be made at 1115 East Pence Road, Cameron, Missouri, 64429.

10. Defendant Missouri Department of Corrections is an entity of the State of Missouri that can sue and be sued, and receives federal funding. Its current director is George A. Lombardi . Service can be made at 2729 Plaza Drive, Jefferson City, Missouri, 65102.

11. Defendant Doug Worsham is a citizen of the United States and is employed by the Missouri Department of Corrections as the Supervisor of Religious Programming with the authority to grant or deny group accommodations for inmate religious groups, and is being sued in both his individual and official capacities for acting under color of law as alleged herein. Service can be made at 2729 Plaza Drive, Jefferson City, Missouri, 65102.

12. Defendant George A. Lombardi is a citizen of the United States and is employed by the Missouri Department of Corrections as the Director of the Department of Corrections with

the authority to appoint members to the Religious Advisory Committee, and to grant or deny group accommodations for inmate religious groups, and is being sued in both his individual and official capacities for acting under color of law as alleged herein. Service can be made at 2729 Plaza Drive, Jefferson City, Missouri, 65102.

13. Defendant Religious Programming Advisory Council is an entity created by the Missouri Department of Corrections whose members are chosen by the Director of the Missouri Department of Corrections to be *de facto* employees to make decisions regarding religious group recognition and accommodations which affect operations within the Missouri Department of Corrections. This defendant and its members are being sued in their individual and official capacities as *de facto* employees of the Missouri Department of Corrections for acting under color of law as alleged herein. Service can be made upon the Religious Programming Supervisor, Doug Worsham, or the Director of the Missouri Department of Corrections, George A. Lombardi, at 2729 Plaza Drive, Jefferson City, Missouri 65102.

14. Defendants John Does 1-99 are citizens of the United States and are employees or *de facto* employees of the Missouri Department of Corrections and are all members of the Religious Programming Advisory Council to determine group accommodations for inmate religious groups, and/or others who determine group accommodations for inmate religious groups. These defendants are being sued in both their individual and official capacities for acting under color of law as alleged herein. Service can be made upon the Religious Advisory Committee of the Missouri Department of Corrections at 2729 Plaza Drive, Jefferson City, Missouri, 65102.

## STATEMENT OF EXHAUSTION OF ADMINISTRATIVE REMEDIES

15. Plaintiffs began their administrative remedies by filing Informal Resolution Request Numbers JCCC-08-1908 (July 23, 2008), JCCC-08-1833 (July 24, 2008), JCCC-08-1935 (July 24, 2008), CRCC-08-1303 (July 25, 2008), SCCC-08-2540 (January 14, 2009). All requests

were for group accommodation and equal protection with other similarly situation religious groups.

16. These administrative proceedings were completed at the Grievance First Appeal stage when the Deputy Division Directors denied group accommodations. (See Exhibits A-D, attached hereto).

## STATEMENT OF THE CASE

17. The Missouri Department of Corrections (hereafter, MDOC) receives federal funding from the United States Government.

18. The Missouri Department of Corrections created an entity known as the Religious Programming Advisory Council whose sole purpose is to advise in the general area of religious policy, procedure, program development, and chaplain services as requested by the supervisor of religious/spiritual programming. This entity and its purpose is explained in MDOC's Institutional Services Policy IS17-1.1.II.L.

19. The Christian Separatist Church Society (hereafter, CSCS) is an international religious organization headquartered in Kodak, Tennessee, and in Australia, with numerous parishes world wide.

20. Plaintiffs are inmates of the Christian Separatist Faith. CSCS refers to its prison chapters as the Christian Separatist Church (hereafter, CSC), and inmates who have joined CSC as associate members of CSCS.

21. The Anointed Standard Translation of the New Testament (hereafter, AST) and the Greek Septuagint of the Old Testament (hereafter, Septuagint) are the two holy and primary texts of the CSCS. The Christian Separatist Catechism and all other CSCS media are central to the faith and required study as outlined in the CSC Charter. (Exhibit E, attached hereto).

22. CSCS believes that the Word of God calls for those made in God's image (ADAM) to

separate from all others. CSCS believes that ADAM-kind is the Caucasian race, and that the Adamic people are the chosen people of God taught in scripture. A basic synopsis of the faith is reflected in the CSC General Information and in the Catechism. (Exhibit F, attached hereto).

23. Plaintiffs are seeking equal footing within the MDOC as all other similarly situated religious groups. That is, plaintiffs seek group accommodations and communal worship with its members of the faith.

24. CSCS requires communal worship for members and associate members which is central to their Christian practice and spiritual life. CSCS restricts who may join the church society and become full members of CSCS or associate members of CSC while incarcerated. However, due to prison policies and regulation, CSCS and CSC acknowledge that nonmembers may attend prison services if allowed by prison officials.

25. Plaintiffs have provided defendants with a significant number of inmates requesting an interest in CSC communal worship. (Exhibit M, attached hereto).

26. On July 5, 2001, the MDOC acknowledged CSCS and restricted accommodations for inmates of that faith to solitary practice (in-cell worship) as set out in Institutional Services Policy IS17-1.1 III.A(4), which places a substantial burden upon the inmates of the CSCS faith by denying them communal worship.

27. Defendants afford religious groups with group accommodations to have twice weekly scheduled group callouts, storage facilities for group literature and supplies, alloted quarterly funding from the Inmate Canteen Fund, and annual banquets.

28. As members of CSC, plaintiffs belong to a small religious sect wherein there are no CSCS volunteers in the State of Missouri.

29. The defendants have a policy, IS17-1.1 III.M, which allows offender groups to be supervised by the Chaplain or staff member when no outside sponsors or clergy are available,

and be assisted by other offenders in providing services to offenders of accommodated religious communities. (Exhibit G, attached hereto).

30. On November 24, 2008, defendant Worsham responded in letter to plaintiffs Mansfield, Murphy, and Tate, and inmate Shane Smith, denying CSC group accommodation on the basis of no visiting clergy or volunteers to consistently supervise and direct the CSC communities. (Exhibits H-J, attached hereto).

31. On November 26, 2008, plaintiff Murphy met with Jefferson City Correctional Center's Chaplain Joe Gibson to discuss staff supervision of CSC group services. During this meeting, Chaplain Gibson informed plaintiff Murphy that he would be able and willing to supervise CSC services himself, and that he would be assisted in this endeavor by the security monitoring system installed in his office and in the control center's monitor room.

32. Chaplain Gibson also informed plaintiff Murphy that he is restricted from accommodating CSC without approval of defendant Worsham.

33. On December 1, 2008, plaintiff Murphy responded to defendant Worsham's letter informing him that his position to deny CSC group accommodation based on a lack of outside volunteers was contrary to MDOC policies and that Chaplain Gibson, in accordance with policy, would supervise the group services. (Exhibit K, attached hereto).

34. The chapel areas of each level-five prison within the MDOC are structured similarly with three rooms for group worship and communal services. Each room is equipped with several security cameras as well as large windows which allow constant monitoring of inmate activities. Video monitors are positioned in both the custody control center's monitor room and in the chaplain's office. This type of monitoring alleviates the majority of concern with any kind of inappropriate activity.

35. The MDOC affords the Moorish Science Temple of America, Nation of Islam, and

Hebrew Israelites group accommodations and all privileges under group accommodation. (Exhibit L, attached hereto). These religious groups believe in and teach racial separation.

36. The Moorish Science Temple of America, Nation of Islam, Hebrew Israelites, and Native American Indians are religious groups that are accommodated with group callouts and communal services despite their lack of outside sponsors and clergy, and are supervised by staff members only.

37. There is no history of institutional problems caused by the CSC in the MDOC.

38. The plaintiffs have offered the defendants six less restrictive alternatives that are cost effective and fully supervised which the defendants refuse to consider.

39. The defendants have created a risk of resentment among the inmate population by extending unique privileges, such as group accommodations for separatist teachings to groups of black inmates to the exclusion of white inmates.

## DECLARATORY RELIEF

40. In order to resolve this civil complaint, plaintiffs request that, pursuant to 28 U.S.C. section 2201, this Court declare the respective rights and duties of the parties in this matter and, in particular, that the Court declare defendants' denial of group accommodation for plaintiffs is a substantial burden to their CSCS faith and practice, and is a denial of equal protection with similarly situated religious separatist groups.

41. A valid case or controversy exists sufficient for this Court to declare the rights and remedies of the parties in that:

A. Plaintiffs are being singled out from all other religious groups because of their religious beliefs.

B. Plaintiffs are being denied communal worship and other privileges under group accommodation while other similarly situated religious groups are not; and,

C. Plaintiffs are suffering an ongoing substantial burden to their religious practice while other similarly situated religious groups are not.

42. The plaintiffs have the requisite standing to request these declarations in that plaintiffs are followers of CSCS doctrine and are being denied rights to religious practice, which are freely given to other similarly situated religious groups.

43. The controversy is ripe for determination at this time because the claims are exhausted and defendants' actions are ongoing with no end in sight.

**PERMANENT INJUNCTION**

44. A valid case or controversy exists sufficient for this Court to grant a permanent injunction against enforcement of policy prohibiting group accommodation for CSC inmates in the MDOC in that:

A. Plaintiffs have suffered irreparable injury by being denied group worship and communal service which, pursuant to RLUIPA, accompanies the substantial burden on plaintiffs' rights to free exercise of religion;

B. Remedies available at law, such as monetary damages, are inadequate to compensate for the irreparable injury and substantial burden;

C. The balance of hardships between the plaintiffs and defendants weigh in favor of plaintiffs because defendants can further their goal of maintaining safety and security by adopting one of several alternatives of least restrictive means, warranting remedy in equity; and,

D. Public interest would not be disserved by a permanent injunction because the defendants will be able to maintain the present level of safety within their institutions while also permitting CSC inmates to engage in some form of group worship or communal service.

**FIRST CAUSE OF ACTION – EQUAL PROTECTION**

45. The allegations contained in paragraphs 1 through 44 are incorporated as part of the

First Cause of Action as though they were stated in full.

46. Plaintiffs and CSC are similarly situated as the inmates of the Moorish Science Temple of America, Nation of Islam, and Hebrew Israelites in that these religious groups believe in and teach racial separation.

47. Plaintiffs and CSC are similarly situated as the inmates of the Moorish Science Temple of America, Nation of Islam, Hebrew Israelites, and Native American Indians in that these religious groups do not always have outside sponsors or clergy present at their group worship and communal services, and are quite often supervised by staff members.

48. Plaintiffs are being treated differently than inmates of the Moorish Science Temple of America, Nation of Islam, Hebrew Israelites, and Native American Indians by being denied group accommodations, communal worship, access to storage facilities, quarterly allotment of Inmate Canteen Funds, and annual banquets.

49. Plaintiffs are being treated differently than inmates of the Moorish Science Temple of America, Nation of Islam, Hebrew Israelites, and Native American Indians by being denied group accommodation for the sole purpose of not having outside sponsors and clergy.

50. Defendants' treatment of plaintiffs is substantially burdening plaintiffs' religious practice under RLUIPA and the First Amendment by denying them group worship and communal services.

51. Defendants' treatment of plaintiffs bears no rational relation to any legitimate penal interest because:

A. CSCS is recognized by the MDOC;

B. CSC has no history of institutional problems within the MDOC;

C. Defendants allow the Moorish Science Temple of America, Nation of Islam, and Hebrew Israelites to preach racial separation from the white race, and to publish such teachings

in institutional newsletters and television programming;

D. Defendants have an Institutional Services Policy that allows religious groups to have group accommodation and communal services with just staff supervision when an outside sponsor cannot be located;

E. Defendants allow inmates of the Moorish Science Temple of America, Nation of Islam, Hebrew Israelites, and Native American Indians to have group accommodations and communal services without outside sponsors; and,

F. Defendants only reason for denying plaintiffs and CSC group accommodation and communal services is because of a lack of outside sponsors, which is contrary to policy.

## SECOND CAUSE OF ACTION – RLUIPA

52. The allegations contained in paragraphs 1 through 51 are incorporated as part of the Second Cause of Action as though they were stated in full.

53. The MDOC receives federal funding from the United States Government which gives this Court jurisdiction under 42 U.S.C. section 2000cc-1(b)(1).

54. Defendants' actions have meaningfully curtailed plaintiffs' ability to express adherence to their CSCS faith through communal worship and gathering.

55. Defendants' actions have denied plaintiffs reasonable opportunities to engage in activities that are fundamental to their CSCS faith.

56. Defendants' actions are substantially burdening plaintiffs' religious practice.

57. Defendants' are refusing to consider the available alternative means to accommodate the plaintiffs' requests.

## THIRD CAUSE OF ACTION – FIRST AMENDMENT (FREE EXERCISE)

58. The allegations contained in paragraphs 1 through 57 are incorporated as part of the Third Cause of Action as though they were stated in full.

59. Defendants are substantially burdening plaintiffs' ability to practice fundamental activities of the CSCS faith by denying them group accommodations and communal worship and the burden does not conform to any purpose of upholding institutional security because:

A. CSCS is recognized by the MDOC;

B. CSC has no history of institutional problems within the MDOC;

C. Defendants allow the Moorish Science Temple of America, Nation of Islam, and Hebrew Israelites to preach racial separation from the white race, and to publish such teachings in institutional newsletters and television programming;

D. Defendants have an Institutional Services Policy that allows religious groups to have group accommodation and communal services with just staff supervision when an outside sponsor cannot be located;

E. Defendants allow inmates of the Moorish Science Temple of America, Nation of Islam, Hebrew Israelites, and Native American Indians to have group accommodations and communal services without outside sponsors; and,

F. Defendants only reason for denying plaintiffs and CSC group accommodation and communal services is because of a lack of outside sponsors, which is contrary to policy.

**REQUEST FOR RELIEF**

For the reasons set forth above, plaintiffs demand that:

A. This Court render a declaratory judgment that defendants' denial of group accommodation and communal worship for CSC inmates is a substantial burden to plaintiffs' exercise of religion in violation of the First and Fourteenth Amendments of the United States Constitution and RLUIPA.

B. This Court render a declaratory judgment that defendants are violating plaintiffs' civil rights by denying them equal protection and reasonable opportunities to religious practice in

accordance with their religious doctrines and tenets as are afforded to other similarly situated religious groups within the MDOC.

C. This Court grant a permanent injunction against enforcement of policy prohibiting group accommodation for CSC inmates in the MDOC.

D. Plaintiffs be afforded group accommodation and communal worship, and all privileges listed in Institutional Services Policy for accommodated religious groups.

E. Plaintiffs to recover costs of suit.

F. Grant plaintiffs any and all other relief in which they may be justly entitled.

G. This matter be tried before the court without a jury.

H. That the Court grant class action.

7-31-09 #191434
Date James Eric Mansfield

July 21, 2009
Date Michael Dunham Murphy

8/07/09
Date Bernie Farmer

7-7-09 155209
Date David Tate